CROWELL & MORING , LLP
William M. O'Connor, Esq.
woconnor@crowell.com
Evelyn H. Seeler, Esq.
eseeler@crowell.com
*Attorneys for Plaintiffs*
590 Madison Avenue
New York, New York 10022
(212) 223-4000



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

TRADEWAVES LTD., PARASRAM DARYANI,
NEELAM P. DARYANI, VIKAS P. DARYANI,
NIKESH P. DARYANI, ASHOKKUMAR
DAMODARDAS RAIPANCHOLIA, DILIP
DAMODARDAS RAIPANCHOLIA,
RAJESHKUMAR DAMODARDAS
RAIPANCHOLIA, KISHU NATHURMAL
UTTAMCHANDANI, PRERNA VINOD
UTTAMCHANDANI , RAJENDRAKUMAR
PATEL, VANDNA PATEL, ARJAN MOHANDAS
BHATIA, KISHIN MOHANDAS BHATIA,
SURESH M. BHATIA, BHARAT MOHANDAS,
and AARVEE LTD.,

          Plaintiffs,

   -against-

STANDARD CHARTERED INTERNATIONAL
(USA) LTD. and
STANDARD CHARTERED PLC,

       Defendants.

---

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.

**COMPLAINT**

Plaintiffs TRADEWAVES LTD., PARASRAM DARYANI, NEELAM P. DARYANI,

VIKAS P. DARYANI, NIKESH P. DARYANI, ASHOKKUMAR DAMODARDAS

RAIPANCHOLIA, DILIP DAMODARDAS RAIPANCHOLIA, RAJESHKUMAR

DAMODARDAS RAIPANCHOLIA, KISHU NATHURMAL UTTAMCHANDANI, PRERNA

VINOD UTTAMCHANDANI, RAJENDRAKUMAR PATEL, VANDNA PATEL, ARJAN

MOHANDAS BHATIA, KISHIN MOHANDAS BHATIA, SURESH M. BHATIA, BHARAT
MOHANDAS, and AARVEE LTD., by and through their attorneys CROWELL & MORING,
LLP, respectfully allege as follows:

## NATURE OF THE ACTION

1.    This action seeks redress for losses suffered by plaintiffs, customers of defendants
STANDARD CHARTERED INTERNATIONAL (USA) LTD. and STANDARD
CHARTERED PLC (collectively the "STANDARD CHARTERED Defendants"), as result of
securities fraud violations and related common law infractions committed by the STANDARD
CHARTERED Defendants in connection with investment by these banks in Fairfield Sentry,
Ltd., a fund which improperly invested substantially all or a large portion of its assets with
Bernard Madoff ("Madoff") and Bernard L. Madoff Investment Securities ("BMIS").

2.    On December 11, 2008, the United States Securities and Exchange Commission
commenced an action in the United States District Court for the Southern District of New York
against Madoff and BMIS, entitled *SEC v. Bernard L. Madoff and Bernard L. Madoff Investment
Securities*, 08 Civ. 10791 (LLS) (the "SEC Complaint").

3.    As set forth in the SEC Complaint, Madoff and BMIS controlled billions of
dollars in investments which supposedly earned stable returns when in fact the returns were
fictitious and part of a giant Ponzi scheme.

4.    The STANDARD CHARTERED Defendants promoted Fairfield Sentry, Ltd. to
Plaintiffs as having a "mythical status" for generating stable and steady returns with low
volatility.

5.    The STANDARD CHARTERED Defendants represented to Plaintiffs that
Fairfield Sentry, Ltd. and other related entities (the "Fairfield Entities") operated highly sought
after funds and that even though these funds were "closed end," the Fairfield Entities would take

2

investments from the STANDARD CHARTERED INTERNATIONAL (USA) LTD. because of that bank's reputation.

6.      Most importantly, the STANDARD CHARTERED Defendants assured Plaintiffs that they had conducted extensive due diligence on Fairfield Sentry, Ltd., recommending the investment and Plaintiffs relied on such assurances, reputation, and due diligence commitment promised by the STANDARD CHARTERED Defendants in making their investments.

7.      Moreover, the STANDARD CHARTERED Defendants knew of, and failed to disclose to their customers the unusual structure of Fairfield Sentry, Ltd., as well as the risks involved in the structure, whereby BMIS served as both the sub-custodian of the assets and the executing broker, so that when the Fairfield Entities purported to check the custodian's records against the broker's records, they were checking information received from BMIS against other information received from BMIS.

8.      In or about February of 2009, the STANDARD CHARTERED Defendants admitted that they recommended the investment in Fairfield Sentry, Ltd. to customers without having conducted any of their own due diligence or investigations.

9.      The STANDARD CHARTERED Defendants also admitted that they knew about Fairfield Sentry, Ltd.'s high-risk structure, a fact which was not disclosed to its customers.

10.     These admissions underscore that the STANDARD CHARTERED Defendants knowingly or recklessly made material misrepresentations and/or omissions to plaintiffs about the investments with Fairfield Sentry, Ltd. in violation of the federal securities laws and common law fraud as well as provides the basis for Plaintiffs' additional claims.

11.     Plaintiffs losses resulted from the breach of fiduciary duty, gross negligence and unjust enrichment of STANDARD CHARTERED INTERNATIONAL (USA) LTD. and STANDARD CHARTERED PLC by failing to exercise proper due diligence in the investment

of Plaintiffs' funds in Fairfield Sentry, Ltd., and failing to follow Plaintiffs' direction as to such investments.

**JURISDICTION AND VENUE**

12.    The securities claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78(a), Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5 and the Investment Advisers Act, 15 U.S.C. § 80b-1 et seq. The common law claims asserted herein arise out of the same transactions or occurrences giving rise to the securities claims.

13.    This Court has jurisdiction over this action pursuant to Section 27 of the Securities and Exchange Act, Section 214 of the Investment Advisers' Act and the supplemental jurisdiction of this court. Defendants transact business in this district. This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367.

14.    Venue is proper in this judicial district pursuant to Section 27 of the Securities and Exchange Act, Section 214 of the Investment Advisers Act and § 1391(b). Substantial acts in furtherance of the alleged conduct and its effects have occurred within this district. Defendants also conduct substantial business within this district.

15.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange and/or markets.

**PARTIES**

16.    Plaintiff TRADEWAVES LTD. is a British Virgin Islands investment holding company, with a principal place of business in Dubai, United Arab Emirates, that at all times

4

hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

17. Plaintiff PARASRAM DARYANI is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

18. Plaintiff NEELAM P. DARYANI is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

19. Plaintiff VIKAS P. DARYANI is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

20. Plaintiff NIKESH P. DARYANI is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

21. Plaintiff ASHOKKUMAR DAMODARDAS RAIPANCHOLIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

22. Plaintiff DILIP DAMODARDAS RAIPANCHOLIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account

holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

23. Plaintiff RAJESHKUMAR DAMODARDAS RAIPANCHOLIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

24. Plaintiff KISHU NATHURMAL UTTAMCHANDANI is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

25. Plaintiff PRERNA VINOD UTTAMCHANDANI is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

26. Plaintiff RAJENDRAKUMAR PATEL is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

27. Plaintiff VANDNA PATEL is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

28. Plaintiff ARJAN MOHANDAS BHATIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the

6

STANDARD CHARTERED Defendants, as defined below, which invested on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

29.    Plaintiff KISHIN MOHANDAS BHATIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

30.    Plaintiff SURESH M. BHATIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

31.    Plaintiff BHARAT MOHANDAS is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

32.    Plaintiff AARVEE LTD. is a British Virgin Islands investment holding company, with a principal place of business in Dubai, United Arab Emirates, that at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in Fairfield Sentry, Ltd.

33.    Defendant STANDARD CHARTERED  INTERNATIONAL (USA) LTD. is a successor in interest and name to American Express Bank, Ltd., and is a corporation organized under the laws of the State of Connecticut, with a principal place of business in New York, New York.

34.    Defendant STANDARD CHARTERED PLC is incorporated in the United Kingdom with limited liability under company number 966425, with a place of business in New

7

York, New York, and is the parent corporation of STANDARD CHARTERED

INTERNATIONAL (USA) LTD.

### FACTUAL ALLEGATIONS

35.     In or about 2004, TRADEWAVES LTD., PARASRAM DARYANI, NEELAM

P. DARYANI, VIKAS P. DARYANI, NIKESH P. DARYANI, ASHOKKUMAR

DAMODARDAS RAIPANCHOLIA, DILIP DAMODARDAS RAIPANCHOLIA,

RAJESHKUMAR DAMODARDAS RAIPANCHOLIA, KISHU NATHURMAL

UTTAMCHANDANI, PRERNA VINOD UTTAMCHANDANI, RAJENDRAKUMAR PATEL,

VANDNA PATEL, ARJAN MOHANDAS BHATIA, KISHIN MOHANDAS BHATIA,

SURESH M. BHATIA, BHARAT MOHANDAS, and AARVEE LTD. (collectively "Plaintiffs")

entered into a business relationship as customers of American Express Bank, Ltd. ("AEB"),

which was incorporated in the State of Connecticut with its principal place of business in New

York, New York, and opened the various separate accounts described below with such bank for

the purposes of investment of Plaintiffs' funds by AEB (the "Accounts")

- Standard Chartered Account Number ***572, owned by Plaintiff Tradewaves Ltd. As of October 31, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $752,475.51.

- Standard Chartered Account Number ***834, owned by Plaintiffs Parasram Daryani, Neelam P. Daryani, Vikas P. Daryani, and Nikesh P. Daryani. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $974,885.67.

- Standard Chartered Account Number **701, owned by Plaintiffs Nikesh P. Daryani and Neelam P. Daryani. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $347,162.95.

- Standard Chartered Account Number **481, owned by Plaintiffs Vikas P. Daryani and Neelam P. Daryani. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $482,936.20.

- Standard Chartered Account Number **519, owned by Plaintiffs Ashokkumar D. Raipancholia, Dilipo D. Raipancholia, and Rajeshkumar D. Raipancholia. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $837,813.40.

- Standard Chartered Account Number ***017, owned by Plaintiff Prerna Vinod Uttamchandani and Kishu Nathurmal Uttamchandani. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $236,224.28.

- Standard Chartered Account Number **846, owned by Plaintiffs Arjan Mohandas Bhatia, Kishin Mohandas Bhatia, Suresh M. Bhatia, and Bharat Mohandas. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $410,518.03.

- Standard Chartered Account Number ***363, owned by Plaintiff Rajendra Patel. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $256,925.56.

- Standard Chartered Account Number ***065, owned by Plaintiff Aarvee Ltd. As of November 30, 2008, the amount of Defendant Standard Chartered USA's investment from this account in Fairfield Sentry Ltd. was $455,023.32.

36.     Each and all of Plaintiffs advised AEB that they wanted a low-risk, long-term investment strategy.

37.     From November 2004 through June 2007, AEB invested Plaintiffs' funds in Fairfield Sentry, Ltd.

38.     AEB's relationship managers and officers, Surendran Menon ("Menon") and Mortezah Farzaneh ("Farzaneh"), recommended such investment, as a "cash substitute," touting its apparent history of stable and steady returns, and advised Plaintiffs that AEB had conducted extensive due diligence on Fairfield Sentry, Ltd. before recommending the investment to its clients.

9

39.     Menon and Farzaneh represented that the Fairfield Entities had achieved "mythical status" for the ability of Fairfield Sentry, Ltd. to generate steady and consistent returns with low volatility.

40.     AEB further advised Plaintiffs that Fairfield Sentry, Ltd. would be part of the select few investments which would form the core of the Plaintiffs' portfolio, due to its consistent returns and the lack of available shares which would come into the market.

41.     AEB stressed that Fairfield Sentry, Ltd. was a closed end fund, but because of AEB's reputation, AEB was able to convince the Fairfield Entities to accept the investments by AEB's customers.

42.     AEB represented to Plaintiffs that an investment in Fairfield Sentry, Ltd. was highly sought after and Plaintiffs should not miss such an investment opportunity.

43.     Plaintiffs relied on representations made by AEB that it had conducted extensive due diligence on the Fairfield Entities and that an investment with Fairfield Sentry, Ltd. would generate consistent returns with low volatility.

44.     At such time, AEB knew or should have known that Fairfield Sentry, Ltd. invested a large proportion of its investors' funds with Madoff and BMIS.

45.     Reasonable due diligence, including typical quantitative analysis, would have established that Fairfield Sentry, Ltd., Madoff and BMIS were involved in a fraudulent scheme and that the investment returns touted by AEB were not possible.

46.     At such time, AEB knew or should have known that Fairfield Sentry, Ltd. acquiesced to an unusual relationship with Madoff and BMIS, whereby BMIS served as both the sub-custodian of the assets and the executing broker. Under this structure, any attempt to verify the transactions by checking the custodian's records against the broker's records, would have

10

involved checking information received from BMIS against other information received against BMIS.

47.     Upon information and belief, no other Fairfield fund had the same entity serving as the sub-custodian and the executing broker.

48.     AEB did not disclose the structure of Fairfield Sentry, Ltd. to its customers or the risks involved in such a structure.

49.     Had Plaintiffs known that Fairfield Sentry, Ltd. was structured such that its sub-custodian and executing broker were one in the same, Plaintiffs would not have allowed AEB to invest their funds with Fairfield Sentry, Ltd.

50.     Plaintiffs invested millions of dollars with AEB based upon AEB's misrepresentations that AEB had specially chosen, following AEB's own extensive due diligence, the safest investments for its customers, which constituted a "cash substitute."

51.     Instead AEB merely passed along, verbally and through documentation, the misrepresentations of the Fairfield Entities that Fairfield Sentry, Ltd. was a low risk, long term investment.

52.     AEB omitted to advise Plaintiffs that AEB's recommendations were based on nothing but the propaganda printed and issued by the Fairfield Entities, which propaganda was ultimately covering up the fraudulent Ponzi scheme led by Madoff and BMIS.

53.     The Fairfield Entities misrepresented through issued statements and other publications that Fairfield Sentry, Ltd. was obtaining a steady stream of returns for its trading strategies, that they conducted extensive due diligence on investments and operated under complete transparency when, in fact Fairfield Sentry, Ltd. was controlled by Madoff and BMIS.

54.     From on or about November 2004 through February 2008, AEB charged Plaintiffs investment advisor fees on a quarterly basis, which fees were debited from the Accounts.

11

55.    On or about September 18, 2007, Defendant STANDARD CHARTERED PLC announced it had reached an agreement to acquire AEB.

56.    On or about February 2008, AEB was acquired in its entirety by STANDARD CHARTERED PLC.

57.    Thereafter, AEB was renamed STANDARD CHARTERED INTERNATIONAL (USA) LTD. ("STANDARD CHARTERED USA").

58.    The acquisition of AEB by STANDARD CHARTERED PLC included Plaintiffs' Accounts.

59.    As a result of the foregoing, STANDARD CHARTERED USA is a successor in interest to AEB, and as such, STANDARD CHARTER USA is responsible for all the material misrepresentations and omissions of AEB.

60.    After the acquisition of AEB by STANDARD CHARTERED PLC, Plaintiffs' funds continued to be invested by the STANDARD CHARTERED Defendants in Fairfield Sentry, Ltd.

61.    From November 2004 through the first quarter 2008, when Plaintiffs asked the STANDARD CHARTERED Defendants, on several occasions, whether they should remain invested in Fairfield Sentry, Ltd., the STANDARD CHARTERED Defendants advised Plaintiffs to remain in such investments, refrain from taking profits of year over year returns, all because there were no attractive opportunities in the markets to deploy the resulting cash and cash returns that would match the risk-reward ratio of Fairfield Sentry, Ltd.

62.    The STANDARD CHARTERED Defendants continued to misrepresent to Plaintiffs that the investments in Fairfield Sentry, Ltd. were a "cash substitute" and that there was little risk in leaving Plaintiffs' funds with Fairfield Sentry, Ltd.

12

63.     The STANDARD CHARTERED Defendants omitted to advise the Plaintiffs, that

their recommendation that Plaintiffs' funds remain in Fairfield Sentry, Ltd., was made without

making any investigation and by relying solely on propaganda received from the Fairfield

Entities.

64.     As of October 31, 2008, the aggregate investment by Defendant STANDARD

CHARTERED USA in Fairfield Sentry, Ltd. from Plaintiffs' STANDARD CHARTERED USA

Accounts totaled $4,753,964.92.

65.     From November 2004 through October 2008, STANDARD CHARTERED USA

charged Plaintiffs investment fees on a quarterly basis, which fees were debited from the

Accounts.

66.     Upon information and belief, on or about February 2, 2009, at the Dubai office of

the STANDARD CHARTERED Defendants, certain customers met with W. Richard Holmes

("Holmes"), the co-Chair of STANDARD CHARTERED USA and Chief Executive Officer,

Europe, for STANDARD CHARTERED PLC.

67.     Upon information and belief, prior to STANDARD CHARTERED PLC's

acquisition of AEB, Holmes was the Chairman and Chief Executive Officer of AEB.

68.     At the February 2, 2009 meeting, Holmes admitted to one or more customers that

in recommending Fairfield Sentry, Ltd. as an investment, the STANDARD CHARTERED

Defendants had done none of their own due diligence or investigations but instead had relied

wholly upon representations made by the Fairfield Entities.

69.     Holmes further admitted to one or more customers that the STANDARD

CHARTERED Defendants had not taken any legal action with respect to the rights of the

STANDARD CHARTERED Defendants or their customers, including Plaintiffs, following the

news of the Madoff scandal and the involvement of the Fairfield Entities.

13

70.     The STANDARD CHARTERED Defendants later made representations to Harish Rupani, a director of Plaintiff TRADEWAVES LTD., wherein the STANDARD CHARTERED Defendants admitted being aware that the Plaintiffs' investment in Fairfield Sentry, Ltd. was released to Madoff or BMIS without the STANDARD CHARTERED Defendants or Fairfield Sentry Ltd. taking or holding any securities traded by Madoff or BMIS.

71.     In addition, in correspondence dated April 24, 2009, and again in correspondence dated June 19, 2009, the STANDARD CHARTERED Defendants admitted that they knew of the structure of Fairfield Sentry, Ltd., whereby BMIS served as both the sub-custodian of assets and executing broker.

72.     Nevertheless, the STANDARD CHARTERED Defendants failed or refused to disclose to its customers the structure of Fairfield Sentry, Ltd. or the risks involved in such a structure, but instead, only reassured Plaintiffs that it was a low-risk investment.

### AS AND FOR A FIRST CLAIM
### (Violations of Section 10(b) of the Exchange Act and
### Rule 10b-5 of the Securities and Exchange Commission Against All Defendants)

73.     Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "72" as if fully set forth herein.

74.     This Claim is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

75.     Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiffs, and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs.

14

76.    The purpose and effect of said scheme, plan, and unlawful course of conduct was among other things, to induce Plaintiffs to invest in Fairfield Sentry, Ltd., which was tied to the fraud perpetuated by Madoff and BMIS.

77.    Defendants, pursuant to said scheme, plan and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, or participated in the preparation, issuance and distribution of deceptive and materially false and misleading statements to Plaintiffs.

78.    Plaintiffs, in ignorance of the false and misleading statements set forth above and the deceptive and manipulative devices and contrivances employed by Defendants, relied, to their detriment, on such misleading statements and omissions in investing in Fairfield Sentry, Ltd.

79.    Plaintiffs have suffered substantial damages as a result of the wrongs alleged herein in an amount to be proved at trial, but believed to be in excess of $4,753,964.92, plus interest, fees, penalties and other costs.

80.    By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:  (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in connection with the investments in Fairfield Sentry, Ltd.

## AS AND FOR A SECOND CLAIM
### (Violations of Section 20(A) of The Exchange Act
### Against Defendant Standard Chartered PLC)

81.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "80" as if fully set forth herein.

15

82.   This Claim is asserted against Defendants STANDARD CHARTERED PLC

pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a).

83.   Defendant STANDARD CHARTERED PLC acted as a controlling person within

the meaning of Section 20(a) of the Exchange Act, of defendant STANDARD CHARTERED

USA by virtue of its 100% ownership and control of STANDARD CHARTERED USA.

84.   Defendant STANDARD CHARTERED PLC influenced, directed and controlled

defendant STANDARD CHARTERED USA with regard to its actions, representations and

omissions set forth herein.

85.   By virtue of its 100% control of STANDARD CHARTERED USA, defendant

STANDARD CHARTERED PLC had the ability to prevent the actions, misrepresentations and

omissions committed herein.

86.   As a direct and proximate result of the wrongful conduct, Plaintiffs suffered an

economic loss and damages in connection with the investment of their funds in an amount to be

proven at trial, but believed to be in excess of $4,753,964.92, plus interest, fees, penalties and

other costs.

**AS AND FOR A THIRD CLAIM**
**Rescission under the Investment Advisers Act, 15 U.S.C. § 80b-1 et seq.**
**(Against Defendant Standard Chartered USA)**

87.   Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through

"86" as if fully set forth herein.

88.   Defendant STANDARD CHARTERED USA acted as an "investment adviser" to

Plaintiffs pursuant to the Investment Advisers Act.

89.   By executing the Private Banking Services Agreement with AEB and/or the

Client Agreement with the STANDARD CHARTERED Defendants, and other agreements,

16

Plaintiffs and defendant STANDARD CHARTERED USA entered into "investment adviser agreements" under the Investment Advisers Act.

90.     As investment advisers, defendant STANDARD CHARTERED USA was not permitted to "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. §80b-6(2).

91.     Defendant STANDARD CHARTERED USA breached its duties to Plaintiffs by engaging in a course of conduct in which they recklessly engaged in transactions, practices and a course of business which allowed a fraud to be perpetrated on Plaintiffs.

92.     Defendant STANDARD CHARTERED USA breached its duties by:

    a.   misrepresenting to Plaintiffs that the STANDARD CHARTERED Defendants conducted extensive due diligence on the Fairfield Entities and that an investment in Fairfield Sentry, Ltd. would generate consistent returns with low volatility;

    b.   failing to perform adequate due diligence, or to follow their own internal due diligence protocols, before investing Plaintiffs' funds in Fairfield Sentry, Ltd.;

    c.   publishing and releasing materials to Plaintiffs that contained false and misleading information of the care taken by Defendants with respect to Plaintiffs' funds, about the manner in which these assets were being invested, and of the value of these assets;

    d.   investing Plaintiffs' funds in Fairfield Sentry, Ltd. with inadequate diligence or monitoring;

    e.   failing to monitor Plaintiffs' investments in Fairfield Sentry, Ltd. on an continuous basis to any reasonable degree, or to comply with their own

internal protocols for monitoring the funds which were ultimately entrusted to
Madoff and BMIS;

f.   failing to take adequate steps to confirm the account statements of Fairfield
Sentry, Ltd. and related transactions, as well as periodic performance
representations of Fairfield Sentry, Ltd. by the Fairfield Entities.

93.     Defendant STANDARD CHARTERED USA is liable for all damages sustained
by Plaintiffs, as a direct participant in the wrongs listed above.

94.     The purpose of the defendant STANDARD CHARTERED USA's conduct was to
enrich itself at Plaintiffs' expense.

95.     The aforementioned conduct by defendant STANDARD CHARTERED USA
was so reckless as to constitute a deceit or fraud upon Plaintiffs.

96.     Plaintiffs have been damaged as a result of defendant STANDARD
CHARTERED USA's breach of their duties under the Investment Advisers Act.

97.     As a result, Plaintiffs are entitled to rescission of their investment adviser
agreements with the defendant STANDARD CHARTERED USA and to recover all fees and
commissions paid in connection to Plaintiffs' investments in Fairfield Sentry, Ltd.

## AS AND FOR A FOURTH CLAIM
### (Breach of Fiduciary Duty Against All Defendants)

98.     Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through
"97" as if fully set forth herein.

99.     Plaintiffs entrusted their funds to the STANDARD CHARTERED Defendants,
which owed fiduciary duties to Plaintiffs.

100.    As investment management advisors, the STANDARD CHARTERED
Defendants knew or should have known how to perform their duties including, but not limited to

the monitoring of the safety and performance of Plaintiffs' funds in a prudent and professional manner.

101.    The STANDARD CHARTERED Defendants breached their fiduciary duties to Plaintiffs and acted in reckless disregard of those duties by:

a.    misrepresenting to Plaintiffs that the STANDARD CHARTERED Defendants conducted extensive due diligence on the Fairfield Entities and that an investment in Fairfield Sentry, Ltd. would generate consistent returns with low volatility;

b.    failing to exercise generally the degree of prudence, caution and good business practices that would be expected of reasonable investment professionals overseeing client funds;

c.    publishing and releasing materials to Plaintiffs that contained false and misleading information of the care taken by Defendants with respect to Plaintiffs' funds, about the manner in which these assets were being invested, and of the value of these assets;

d.    failing to act with reasonable care in ascertaining that the information set forth in the Memorandum and other written materials provided to Plaintiffs was accurate and did not contain false and misleading statements or omissions of material facts;

e.    failing to take reasonable steps to oversee that the investment of the assets of Plaintiffs were made and maintained in a prudent and professional manner;

f.    failing to investigate or perform due diligence or review as to the actual relationship of Madoff and BMIS with Fairfield Sentry, Ltd. and the underlying basis for the investments and performance claimed by the Fairfield Entities, Madoff and BMIS;

g.    failing to perform reasonable and adequate due diligence in the selection of, and continuing selection of the Fairfield Entities, Madoff and BMIS , including the roles of Madoff and BMIS;

19

h.      allowing investments of Plaintiffs' funds in the Madoff and BMIS Ponzi scheme through the Fairfield Entities feeder fund without adequate and reasonable due diligence, auditing or monitoring;

i.      failing to monitor or audit the Fairfield Entities, Madoff and BMIS on an ongoing basis to any reasonable degree;

j.      failing to take reasonable steps to preserve the value of Plaintiffs' investments.

102.    As a direct and proximate result of the STANDARD CHARTERED Defendants' breaches of their fiduciary duties, Plaintiffs have suffered damages and are entitled to recovery of such damages from the STANDARD CHARTERED Defendants, jointly and severally, in an amount to be proven at trial, but believed to be in excess of $4,753,964.92, plus interest, fees, penalties and other costs, as well as a return of all fees paid to the STANDARD CHARTERED Defendants.

103.    Because the STANDARD CHARTERED Defendants willfully and wantonly disregarded Plaintiffs' rights in breaching their fiduciary duties, Plaintiffs are entitled to punitive damages.

## AS AND FOR A FIFTH CLAIM
### (Gross Negligence Against All Defendants)

104.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "103" as if fully set forth herein.

105.    As investment managers with discretionary control over the assets entrusted to them by Plaintiffs, the STANDARD CHARTERED Defendants owed Plaintiffs a duty to manage and monitor the investments of Plaintiffs with reasonable care.

106.    Defendants breached this duty by failing to:

a.      Take all reasonable steps to ensure that the investment of Plaintiffs' funds were made and maintained in a prudent and professional manner;

20

       b.      Take all reasonable steps to preserve the value of Plaintiffs' investment;

       c.      Perform all necessary and adequate due diligence or review;

       d.      Exercise generally the degree of prudence, caution and good business practices that would be expected of any reasonable investment professional.

107.    As a direct and proximate result of Defendants' gross negligence, Plaintiffs and have suffered damages and are entitled to such damages from Defendants, jointly and severally, in an amount to be proven at trial, but believed to be in excess of $4,753,964.92, plus interest, fees, penalties and other costs, as well as a return of all fees paid to Defendants.

## AS AND FOR A SIXTH CLAIM
### (Unjust Enrichment and Constructive Trust Against All Defendants)

108.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "107" as if fully set forth herein.

109.    Defendants financially benefited from their unlawful acts which caused Plaintiffs to suffer injury and monetary loss.

110.    As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner and each Defendant should pay its own unjust enrichment to Plaintiffs.

111.    Plaintiffs are entitled to the establishment of a constructive trust impressed on the benefits to Defendants from their unjust enrichment and inequitable conduct.

## AS AND FOR A SEVENTH CLAIM
### (Common Law Fraud Against All Defendants)

112.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "111" as if fully set forth herein.

113.   Accordingly, Plaintiffs suffered compensatory damages in an exact amount to be determined at trial, but believed to be in excess of $4,753,964.92, plus interest, fees, penalties and other costs.

114.   In committing the fraud as alleged, the Defendants acted in reckless disregard for the truth, in conscious disregard for Plaintiffs' rights, and with malice and oppression so as to justify an award of punitive damages.

## AS AND FOR A EIGHTH CLAIM
### (Specific Performance Claim Against All Defendants)

115.   Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "114" as if fully set forth herein.

116.   Plaintiffs have no adequate remedy of law.

117.   Based upon the foregoing,  Plaintiffs are entitled to specific performance to obtain redeemed funds due to their Accounts.


**WHEREFORE,** Plaintiffs respectfully request the following relief:

(a)   Rescission of all contractual relationships between Plaintiffs and the STANDARD CHARTERED Defendants and a return of all principal as well as fees paid by Plaintiffs to STANDARD CHARTERED Defendants;

(b)   Compensatory, consequential, and general damages in an amount to be determined at trial;

(c)   Such temporary, preliminary and permanent injunctive relief, including imposition of a constructive trust, as is appropriate to preserve and protect the assets of the Plaintiffs;

(d)   Disgorgement and restitution of all earnings, profits, compensation and benefits received by the Defendants as a result of their unlawful acts and practices;

22

(e)     Punitive damages in the discretion of the Court on account of Defendants'

fraudulent, willful, wanton and reckless disregard of Plaintiffs' rights;

(f)     Costs and disbursements of the action;

(g)     Contractual and judicial interest upon all economic damages;

(h)     Reasonable attorneys' fees where appropriate; and

(i)     Such other and further relief as this Court may deem fair, just and proper.


Dated: New York. New York
        November 11, 2009

CROWELL & MORING LLP

By: _____
William M. O'Connor, Esq.
Evelyn H. Seeler, Esq.
*Attorneys for Plaintiffs Tradewaves Ltd., Parasram*
*Daryani, Neelam P. Daryani, Vikas P. Daryani,*
*Nikesh P. Daryani, Ashokkumar Damodardas*
*Raipancholia, Dilip Damodardas Raipancholia,*
*Rajeshkumar Damodardas Raipancholia, Kishu*
*Nathurmal Uttamchandani, Prerna Vinod*
*Uttamchandani, Rajendrakumar Patel, Vandna*
*Patel, Arjan Mohandas Bhatia, Kishin Mohandas*
*Bhatia, Suresh M. Bhatia, Bharat Mohandas, and*
*Aarvee Ltd.*
590 Madison Avenue, 20th Fl.
New York, New York 10022
(212) 223-4000
E-mail: woconnor@crowell.com
E-mail: eseeler@crowell.com